Herbert Burwig and Gertrude Burwig v. Commissioner.
Burwig v. Commissioner
Docket No. 37227.
United States Tax Court
1953 Tax Ct. Memo LEXIS 82; 12 T.C.M. (CCH) 1197; T.C.M. (RIA) 53339; October 27, 1953
*82 Petitioners, under the facts disclosed, held to be entitled to deduct in 1948 the depreciated cost, less one dollar, of a frame building owned and rented by them for several years to tenants, where in the taxable year they decided to raze the building and effected their purpose by conveying it to a purchaser for one dollar and the latter's obligation to remove it from the premises in 30 days. The cost to petitioners of securing from a tenant the termination of its lease, held to be a capital expenditure to be recovered over the unexpired term of the terminated lease. Harold Fein, Esq., 435 *83 Brisbane Building, Buffalo, N.Y., for the petitioners. John J. O'Toole, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent has determined a deficiency in income tax against petitioners for the calendar year 1948 in the amount of $3,955.82. This deficiency arises through the disallowance by the respondent of a deduction taken by the petitioners, claimed as resulting from the loss of the depreciated cost of a building voluntarily removed by them from premises they owned, and the cost to them, taken as an expense, of securing a cancellation of a lease on such premises prior to the removal. Findings of Fact The petitioners are husband and wife and reside at 870 Humbolt Parkway, Buffalo, New York. The petitioner Herbert Burwig is a practicing physician. The return in question was filed with the collector of internal revenue for the twenty-eighth district of New York. On October 25, 1945, the petitioners purchased a frame apartment house and garage located at 836 Humbolt Parkway in Buffalo for the sum of $16,000. Of this total cost, the amount apportioned to the cost of the building was $8,000, and the correctness of this *84 apportionment is not contested. At the time of the acquisition of this property it was under lease to the Public Housing Administration, who in turn had subleased the property to individual tenants, it having been remodeled from a one family dwelling into four separate apartments. From the date of acquisition, October 25, 1945, to the date of sale on March 31, 1948, as hereinafter detailed, petitioners rented the property, the lessee up to January 31, 1948, being the Public Housing Administration, and for the two months period subsequent to the termination of the lease of the Public Housing Administration the property was under lease from petitioners direct to the tenants occupying the premises. The lease to the Public Housing Administration was terminated by agreement between petitioners and the lessee upon payment to the lessee by petitioners of $750. The sum of $200 was also paid to the attorney representing petitioner for his services in negotiating the termination of the lease. The circumstances attending the acquisition of this property by petitioners were that the petitioner Dr. Burwig had as a boy lived in the neighborhood of the premises involved and as a boy had used *85 the large rear yard of these premises as a playground, the lot being 73 X 450 feet. Afterward he became the physician of the party owning the premises and visited the house from time to time and conceived the desire to own it. At the time it was actually acquired by the petitioners the then owner had remodeled it as above set out. At the time of the acquisition of the property the petitioner Dr. Burwig had an idea in mind he might in the future build on the premises a home for himself, including his business offices and those for physicians associated with him. Such plans were not definite to the extent that plans had been perfected for the construction, it being merely an idea under consideration by him. Following the acquisition of title to the property, the petitioners continued to lease it to the Public Housing Administration for a period of two years and three months, at the end of which time they effected a termination of the lease at the cost hereinbefore set out, and thereafter leased the apartments direct to the occupants. Following the termination of the lease to the Public Housing Administration and the leasing of the apartments to the tenants, a situation soon developed *86 which was very annoying to petitioners. The tenants would call at all hours of the night making complaint about plumbing or other claimed defects and demanding immediate action by petitioners to remedy the situation. At the time of the acquisition of the property and at the time of the termination of the lease of the Public Housing Administration, petitioner had no plan or intention to raze or remove the apartments on the property. The petitioner Dr. Burwig in the tentative plan he had of at some future time erecting a combined residence and office on the property had contemplated moving the apartment house to the rear of the large lot and continuing to rent the apartments and from such rentals defray part of the cost of the new building. However, as a result of the extreme unpleasantness of the situation with the tenants, petitioners lost interest in continuing the situation as landlords in rental property of this character. A few days prior to July 31, 1948, petitioner Dr. Burwig visited the premises and walked out to the rear of the lot. A neighbor whom he knew inquired what his intention was with respect to the property, and was advised by Dr. Burwig that he had decided to raze *87 the building. He then made an offer to this neighbor to sell it to him for a consideration of one dollar and his agreement to remove it from the premises within 30 days. This offer was accepted and a deed for the stated consideration was drawn in favor of the neighbor, one Harold Emerson. The one dollar cash consideration stated was paid by the purchaser and the building was removed by such purchaser on March 15, 1949. The delay in the removal was due to difficulty on the part of the purchaser to obtain the funds necessary for removal and $1,000 was loaned such purchaser by the petitioners to aid him in this work. Not until the approximate time of the disposal of this property to Emerson did the petitioners have a plan contemplating the razing or voluntary removal from the premises of the building constituting the four apartments. Following the disposition of the building, the property was held as a vacant lot by petitioners and some effort made to dispose of it as such. An attempt was made to interest the Superintendent of the Deaconess Hospital in acquiring the property as a site for a nurses' home, but it was thought by the superintendent that its location was too far away. Thereupon *88 the petitioners decided to develop the property by the building of the combined residence and doctors' offices which they had tentatively been considering. Plans were thereupon made for this development of the property and the construction of the new building was begun on June 15, 1950. The medical offices of Dr. Burwig are now located in the new building. Opinion It is respondent's contention that the property at 836 Humbolt Parkway was acquired by the petitioners for the fixed purpose of removing the improvements then upon it and the erection of a new building, and that consequently such portion of the petitioners' cost of the property as was represented in the building represented a cost of the new building to be capitalized and recovered through depreciation thereon. If respondent's factual premise is correct, there is no doubt that the cost allocable to the premises removed should be capitalized as a cost of the new improvement. N. W. Ayer & Son, Inc., 17 T.C. 631; Regs. 111, sec. 29.23 (e) (2). In that case we said, as to the interpretation of the cited regulation: "Cases involving the interpretation of this Code provision and the regulation promulgated thereunder *89 look to the intent of the purchaser at the time of the purchase. If the property is bought with the intent to raze the buildings situated thereon and erect a new building, no deduction is allowed at the time of demolition. Liberty Baking Co. v. Heiner (C.A. 3, 1930), 37 Fed. (2d) 703; Providence Journal Co. v. Broderick (C.A. 1, 1939), 104 Fed. (2d) 614; Robert B. Griffin, 17 B.T.A. 255 (1929); and Lansburgh & Brother, Inc., 23 B.T.A. 66 (1931). The fact that a certain value was placed on the buildings at the time of the purchase, that rent was collected, and depreciation claimed has been held to be immaterial where at the time of purchase the intent was to demolish the buildings. Providence Journal Co. v. Broderick, supra. The rationale of such cases is that where there is a purchase of land with the intent to demolish any building situated thereon and erect a new one, no part of the price paid is allocable to the buildings since the buildings have no value to the purchaser and it is the land which is purchased, not the land and buildings. The purchase price, therefore, represents the cost of the land." Petitioners *90 contend that at the time of the acquisition of this property there was no intent to either raze or voluntarily remove the improvements for the erection of a new building. They contend that their intention as to the eventual erection of a new building was vague and indefinite, but that such tentative plan never envisaged the razing or removal of the apartment building but only its being moved back on the lot, as it was desired, if the new building were constructed, to maintain the existing improvement for income producing purposes. They assert that the intention to raze or remove the improvements was one arrived at several years after the acquisition of the property and because of conditions which had arisen shortly prior to the actual removal. Upon these facts, which they claim as established, the petitioners contend that the voluntary removal of the building resulted in a loss in its depreciated cost deductible by petitioners in the year of disposition of the property. Upon consideration of the record, we must agree with the contention of petitioners upon the fact that at the time of the acquisition of the property the removal of existing improvements was not contemplated, and that *91 the determination to secure the removal was due to conditions arising subsequent to such acquisition. Under such conditions the removal of the improvements not being a part of the plan for construction of a new building gives rise to a loss deductible in the year in which the building was razed or disposed of. On the facts, petitioners' counsel argues that the disposition of the existing premises may be considered as a sale. We do not agree with this. The sale for a stated consideration of one dollar plus the obligation of the purchaser to remove the building within 30 days was merely the form taken to secure the razing or removal of the building from the premises and was of the same character as a voluntary demolition. The facts with respect to the disposition of the existing improvements here shown appear to us to be of the character which respondent by his regulations admits to result in a loss deductible from gross income. [1]
*92 We do not agree with petitioners' contention as to the deductibility, as an expense, of their expenditures in securing the termination of the lease of the premises to the Public Housing Administration. The rule appears to be clear that the expense to a lessor for terminating a lease is a capital expenditure to be recovered over the unexpired term of the cancelled lease. The theory basing this rule is that by the payment to the lessee the lessor acquires an asset, namely the right to lease or use the premises for his own purpose for the remaining term of the lease period. Harriet B. Borland, 27 B.T.A. 538; Charles B. Bretzfelder, 21 B.T.A. 789. Petitioners contend that the cost of terminating the lease is deductible in the year incurred, citing Denholm & McKay Co., 2 B.T.A. 444, and Alexander J. Cassatt, 47 B.T.A. 400. These cases have no application, as they involve the question of the deduction of expenditures by a lessee in terminating a lease under which he was obligated. The conditions resulting to a lessor obtaining the termination of a lease and basing the theory that the cost to him of such termination is to be deducted *93 over the unexpired term of the terminated lease do not exist in the case of a termination by a lessee. In the latter case the lessee making a payment in consideration of being released from his obligation sustains a loss for the reason that he receives nothing of asset value by reason of his payment for the termination. We hold that the cost to the petitioners of the termination of the lease to the property here in question is to be taken over the unexpired period of the lease to the Public Housing Administration. Decision will be entered under Rule 50. Footnotes
1. REGULATIONS 111. Sec. 29.23(e)-2. VOLUNTARY REMOVAL OF BUILDINGS. - L/oss due to the voluntary removal or demolition of old buildings, the scrapping of old machinery, equipment, etc., incident to renewals and replacements is deductible from gross income. When a taxpayer buys real estate upon which is located a building, which he proceeds to raze with a view to erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expense on account of the cost of such removal, the value of the real estate, exclusive of old improvements, being presumably equal to the purchase price of the land and building plus the cost of removing the useless building.↩